IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2015 NOV 30  P 2: 25

CLERK'S OFFICE
AT GREENBELT

BY_____DEPUTY

JAMES E. HOUCK,      *

     Plaintiff,      *

     Case No.: GJH-15-1883

v.      *

DEPARTMENT OF PUBLIC SAFETY      *
AND CORRECTIONAL SERVICES,
     *

     Defendant.      *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

James E. Houck brings this suit pursuant to 42 U.S.C. § 1983. Houck, a self-represented plaintiff, is an inmate at Western Correctional Institution ("WCI") in Cumberland, Maryland. He claims he is in imminent danger of harm at WCI. Additionally, he claims he suffered breast enlargement after taking Risperdal, a medication prescribed for him by mental health providers at WCI and Jessup Correctional Institution ("JCI"). ECF Nos. 1, 7. As relief, he requests damages and transfer from WCI to protective custody at Patuxent Institution,[1] JCI,[2] or "Eastern Shore Regional P.C." ECF No. 1 at 3. For the reasons that follow, Houck's request for

---

[1] Patuxent Institution does not have a protective custody unit. ECF No. 9-3. "It is the policy of the Department of Public Safety and Correctional Services not to house verified enemies in the same facility, except in extreme circumstances." *Id.*

[2] Houck sought transfer to WCI from JCI in a prior case. *See Houck v. Warden, Jessup Correctional Institution*, No. GJH-14-3907 (D. Md. June 4, 2015). Houck claimed that he was sexually assaulted and needed to be housed in protective custody because prison gang members wanted to kill him, and requested transfer to WCI. At WCI, Houck is housed in administrative segregation on a protective custody tier and is escorted by an officer whenever he leaves his cell. *See* ECF Nos. 10, 19.

preliminary injunctive relief will be DENIED and the case will be DISMISSED for failure to state a claim.

I. **BACKGROUND**

On June 22, 2015, Houck filed a Motion for a Temporary Restraining Order and a Motion to Proceed in Forma Pauperis. ECF Nos. 1, 2. Houck claimed he was being threatened and called a "snitch" by his enemies and other inmates. ECF No. 1. He also claimed a correctional officer placed an inmate in his cell to sexually assault and kill him. *Id.*

In a supplement to the Complaint filed on July 22, 2015, Houck claimed that on May 1, 2015, Officer Barnes [3] "came to my cell and told me I was be [sic] getting a cellmate." ECF No. 7-3 at 2. Houck objected that he "has P.C. Unit single cell" paperwork.[4] *Id.* Barnes allegedly replied that "he did not care." *Id.* Houck identified the cellmate as "Joe." According to Houck, Joe stated that Barnes had placed him in the cell to sexually assault and kill him. Houck alleges that on May 5, 2015, Joe tried to take over the cell and threatened to kill him. *Id.* Houck also claims Joe tried to offer him food and "make a sex pass" at him. *Id.* Houck states "Joe put his hand on me." *Id.* Houck states he informed a corrections official named Mr. Bennett, and was moved to another cell. *Id.* Importantly, Houck does not allege he was harmed by Joe.

In light of the serious nature of Houck's allegations concerning his immediate safety and in an abundance of caution, on July 9, 2015, this Court ordered the Attorney General's Office to file a limited expedited response to Houck's claims that he is in danger from known enemies and

---

[3] Officer Barnes is not a defendant in this case.

[4] Insofar as Houck claims he is entitled to be single-celled, ECF No. 7 at 2, the Supreme Court has squarely addressed the issue of whether double-celling of prisoners constitutes cruel and unusual punishment, and has held that it does not. *See Rhodes v. Chapman*, 452 U.S. 337, 343–44 (1981). Inmates do not have a constitutional right to placement in a particular prison or security classification. *See Slezak v. Evatt*, 21 F.3d 590 (4th Cir. 1994) (explaining that the Constitution vests no liberty interest in inmates retaining or receiving any particular security or custody status as long as the conditions or degree of confinement is within the sentence imposed). Houck provides no documentation of a security or other need requiring him to be placed on single cell status.

2

that an inmate was placed in his cell by a correctional guard to kill him. ECF No. 4. The Order also directed Houck to supplement the Complaint to provide: 1) the names of the mental health and/or medical providers who prescribed Risperdal for him; 2) the time period over which he used Risperdal; 3) the reasons why he believes his breast enlargement was caused by use of Risperdal; 4) his efforts to alert medical and mental health providers of his concerns about breast enlargement; and 5) why he believes the named Defendant(s) acted with deliberate indifference to his serious medical needs. *Id.* Houck filed a supplement to the Complaint on July 22, 2015. ECF No. 7.

The Office of the Attorney General, by its attorneys, filed a Response with supporting declarations and verified exhibits on July 30, 2015. ECF No. 9. As the Response provided a substantive answer to Houck's request for injunctive relief and was accompanied by verified documentary evidence, Houck was notified it would be treated as a motion for summary judgment. ECF No. 16. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), Houck was provided an opportunity to file an opposition with materials in support. *Id.*

Houck filed correspondence on October 5, 2015, which reiterated his safety concerns safety and requested a transfer. ECF No. 18. Notably, he provided no details to substantiate his allegations or dispute the State's Response and exhibits.

## II. STATE RESPONSE

The State has submitted a declaration from WCI case manager Michael Yates. Yates attests that Houck has been on protective custody status at WCI since February 11, 2014. ECF No. 9-1. Yates states he has found no institutional records to indicate that an inmate was placed in Houck's cell to physically harm or sexually assault him. *Id.* at ¶ 3. Moreover, contrary to Houck's claim that officers placed him in a cell with a dangerous inmate to hurt him, Yates

3

indicates that inmate cell assignments are not made by tier officers. *Id.* Rather, prison traffic officers make inmate cell assignments. *Id.*

Yates attests that Houck has not been housed on a tier or in a unit with a documented enemy at WCI.[5] *Id.* at ¶ 4. Neither of Houck's documented enemies, Trenton Robinson or Corey Yates, is currently at WCI. *Id.*[6] Robinson was housed at WCI from June 19, 2014, until June 16, 2015, but he was in a different housing unit than Houck. According to Case Manager Yates, Houck and Robinson would not have had an opportunity to eat, have recreation, or otherwise interact with each other. ECF No. 9-1 at ¶ 4. Corey Yates and Houck were not housed at WCI at the same time. *Id.*

Case Manager Yates asserts that based on his review of the institutional record, Houck may safely continue to be housed at WCI. ECF No. 9-1 at ¶ 6. Houck has no validated enemies currently at WCI. *Id.* Each time Houck alleged a risk existed, he has elected not to submit additional information to further the investigation of his concerns. *Id.* Yates states that to the best of his knowledge, "there is no known safety risk to prevent Mr. Houck from remaining securely housed in the protective custody wing and no known credible threat to his safety has been established." *Id.*

Thomas Menges is the Coordinator of Administrative Remedy Procedure ("ARP") requests at WCI. Menges attests Houck did not file an ARP raising concerns that an inmate was placed in his cell to physically or sexually assault him. *Id.* at ¶ 5. Menges states Houck filed four ARP requests relevant to his safety concerns. *Id.* On March 20, 2015, Houck submitted WCI ARP 0444-15 claiming that he did not feel safe because two validated enemies and Black

---

[5] Department of Public Safety and Correctional Services policy is not to house verified enemies in the same facility, except in extreme circumstances. ECF No. 9-3.

[6] Robinson and Yates are housed at Patuxent Institution and Roxbury Correctional Institution, respectively. *Id.*; *see also* ECF No. 9-3.

4

Guerilla Family gang members were harassing him. ECF No. 9-2. Houck claimed his life was in danger at the institution. *Id.*; *see also* ECF No. 9-2 at 6. The ARP was dismissed on March 25, 2015. The dismissal read:

> Your request for administrative remedy has been dismissed. Further investigation has revealed that you are currently housed securely as an administrative segregation inmate, with no current cell partner. You do not leave your cell without a hands-on escort by an officer. Case management is closely monitoring your enemy situation and your safety will remain a priority at WCI. You have not provided any evidence to substantiate your claims that staff are harassing you or placing your safety in question. No further actions will be taken at this time.

*Id.*

Houck filed the second ARP on April 14, 2015, WCI ARP 0630-15. *Id.* at 7. He claimed officers on the morning shift were harassing him and that his life was in danger. *Id.* He requested a transfer. *Id.* On April 14, 2015, the ARP was dismissed pending resubmission because additional information was needed to investigate the ARP. Houck was instructed to resubmit the ARP by April 30, 2015 and include the following information: 1) the dates, times, and shifts when the harassment occurs; 2) the names of the officers; and 3) what the officers are doing to harass him. *Id.* On April 15, 2015, the ARP was dismissed for failure to resubmit within the time required. *Id.*

Houck filed the third ARP on May 11, 2015, WCI ARP # 0770-15. Houck claimed that an inmate in cell 5C13, Charles Canter, was sexually harassing him. *Id.* The ARP reported to DPSCS' Intelligence and Investigative Division ("IID") and the incident was logged in the barrack log; however, no further action was advised per IID. ECF 9-1 at ¶ 5.[7] It was determined

---

[7] The ARP response reads:
> Rape, sexual assault, sexual harassment, sexual abuse, sexual misconduct, inmate on inmate sexual misconduct, or other areas afforded protections by standards established under the authority of the Prison Rape Elimination Act (PREA) and related Department procedures, which shall be addressed according to Department procedures for reporting, investigating, resolving, and documenting PREA related incidents.

ECF No. 9-2 at 9.

5

that there was no physical contact between the inmates. Canter was transferred out of the housing unit on May 19, 2015. *Id.*

The fourth ARP was filed on May 13, 2015, WCI ARP # 0793-15. Houck claimed an inmate in cell thirteen was calling him a snitch and harassing him. *Id.* He also alleged that he was being sexually harassed by an inmate in cell fourteen. *Id.* The ARP was dismissed for procedural reasons. It read: "Pending Resubmission per DCD 185-002 VI.L.9. Your complaint contains multiple unrelated issues. Please resubmit by 5/29/15 and include only one issue or a reasonable number of closely related issues." *Id.* The ARP was later dismissed for failure to resubmit by the due date. *Id.*

### III. DISCUSSION

#### A. Motion for Preliminary Injunctive Relief

A party seeking a preliminary injunction or temporary restraining order must establish all four of the following elements: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *The Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 346–47 (4th Cir. 2009). A preliminary injunction is an extraordinary and drastic remedy. *See Munaf v. Geren*, 553 U.S. 674, 689–90 (2008). In the prison context, courts should grant preliminary injunctive relief involving the management of correctional institutions only under exceptional and compelling circumstances. *See Taylor v. Freeman*, 34 F.3d 266, 269 (4th Cir. 1994). A plaintiff must show that the irreparable harm he faces in the absence of relief is "neither remote nor speculative, but actual and imminent." *Direx Israel, Ltd. v. Breakthrough Med. Grp.*, 952 F.2d 802, 812 (4th Cir. 1991) (citation omitted).

Houck's claims of imminent harm lack substantiation. Indeed, Houck acknowledges that he was assigned to a different cell after he notified correction officials about his cellmate. Additionally, Defendants have presented evidence that: tier officers do not make cell assignments; Houck's known enemies are not housed at WCI, contrary to his assertions; and, Houck remains on protective custody status.

Houck's claims of prospective harm are conclusory and speculative. The claims fail to demonstrate he is facing irreparable harm in the absence of injunctive relief, *i.e.* transfer to another facility, or that the harm is neither "remote nor speculative, but actual and imminent." *Direx*, 952 F.2d at 812. In short, he has not met his burden to demonstrate that he is likely to suffer imminent, irreparable harm without injunctive relief or that an injunction would serve the public interest. Therefore, preliminary or permanent injunctive relief will be denied.

### B. Defendant is not amenable to suit

As noted, Houck is proceeding in forma pauperis. This Court is required under statute to dismiss prisoner actions in this posture that are frivolous or malicious, fail to state a claim on which relief may be granted, or seek monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. §§ 1915(e)(2); 1915A.

Title 42 U.S.C. § 1983 "'is not itself a source of substantive rights,' but provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). A suit under § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707 (1999). To state a claim under § 1983, a plaintiff must allege that (1) a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a

person acting under the color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988). Nowhere does Houck identify the federal cause of action he is bringing or allege a "person" acting under the color of state law abridged his rights. Thus, the Complaint fails to set forth a federal cause of action.[8]

The Court is mindful of its obligation to liberally construe the pleadings of pro se litigants such as Houck. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Cruz v. Beto*, 405 U.S. 319 (1972). As noted above, Houck was granted additional time to supplement his Complaint, ECF Nos. 4, 7, because a complainant who submits an inartfully pled action which contains a potentially cognizable claim should be given the opportunity to particularize his complaint in order to define his issues, *see Johnson v. Silvers*, 742 F.2d 823, 825 (4th Cir. 1984). Nonetheless, liberal construction does not mean that a court can ignore a clear failure in the pleading to allege facts which set forth a claim cognizable in a federal district court. *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990); *see also Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985) (stating a district court may not "conjure up questions never squarely presented"). Such is the case here.

Further, Houck's claim against the Department of Public Safety and Correctional Services ("DPSCS") is barred. Under the Eleventh Amendment to the United States Constitution, a state, its agencies, and departments are immune from suits in federal court brought by its citizens or the citizens of another state, unless it consents. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). While the State of Maryland has waived its sovereign immunity for certain tort actions brought in state courts, *see* Md. Code Ann., State Gov't § 12–104(a) (West 2015), it has not waived its immunity under the Eleventh Amendment to suit in

---

[8] Even if this Court were to construe the claims as arising under the Eighth Amendment, this case fails to name a defendant amenable to suit under 42 U.S.C. § 1983.

federal court, *see id.* § 12–103(2). The DPSCS is a state agency. *See* Md. Code Ann., Corr. Servs. § 2–101 (West 2015); Md. Code Ann., State Gov't § 8–201.

## CONCLUSION

For the foregoing reasons, Houck's request for preliminary injunctive relief will be DENIED. Houck has failed to state a claim upon which relief may be granted and this case will be DISMISSED by separate Order to follow.

Dated: November 30, 2015

GEORGE J. HAZEL
United States District Judge

9